**FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MANUEL GUDIEL-SOTO, | : | |
| Petitioner, | : | **OPINION** |
| v. | : | Civ. No. 97-0560 (WHW) |
| UNITED STATES OF AMERICA, | : | |
| Respondent. | : | |

**Walls, Senior District Judge**

On October 29, 2010, petitioner Manuel Gudiel-Soto applied for a writ of error coram nobis pursuant to 28 U.S.C. § 1651(a) to vacate the judgment and conviction entered against him on December 9, 1998. The Government opposes the petition. Pursuant to Rule 78.1 of the Local Rules, the Court decides the application without oral argument. The petition is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

On September 19, 1997, Gudiel-Soto was arrested at an airport in Puerto Rico after a customs search revealed heroin in his luggage. (Resp't Ex. A, Presentence Investigation Report.) Gudiel-Soto was in transit from Aruba to New Jersey. After his arrest, Gudiel-Soto agreed to cooperate with the investigating law enforcement officers. He was permitted to complete his journey and deliver the drugs to his contact in New Jersey. His contact, William Toro, was arrested and prosecuted. Following his arrest, Gudiel-Soto was represented by an attorney from the Office of the Federal Public Defender for the District of New Jersey. Gudiel-Soto was indicted for conspiracy to distribute and possess with intent to distribute more than one kilogram

1

**FOR PUBLICATION**

of heroin. (Pet'r Ex. 2, Indictment.) The charge carried a statutory mandatory minimum sentence of ten years imprisonment, and a maximum sentence of life in prison. (Pet'r Ex. 4, Plea Hearing Tr.)

Gudiel-Soto entered into a plea agreement with the government on January 28, 1998. (Resp't Ex. B, Plea Agreement.) The agreement provided that Gudiel-Soto would plead guilty to the indictment. It also provided that Gudiel-Soto would be sentenced according to the then-existing version of the Federal Sentencing Guidelines. Gudiel-Soto was sentenced on December 8, 1998. Due to Gudiel-Soto's guilty plea and "substantial" cooperation, the government advocated for imposition of a sentence well below the statutory mandatory minimum. (Pet'r Ex. 5, Sentencing Tr.) This Court sentenced Gudiel-Soto to 43 months imprisonment and three years of supervised release. (Resp't Ex. C, J. in a Criminal Case.) He served his term of imprisonment and completed supervised release on October 27, 2003. (Resp't Ex. D, Letter of Termination.)

Gudiel-Soto had filed an application for naturalization with the Immigration and Naturalization Service on September 6, 1995. (Resp't Ex. E, Req. for Withdrawal of Appl. for Naturalization.) He states that at the time of his arrest, he had substantially completed the process of becoming a citizen; the only step remaining was for him to take the oath of citizenship. He withdrew his application on August 28, 2001, because he learned that his criminal conviction would prevent his application from being approved. (Resp't Ex. F, Confirmation Processing Worksheet.)

The government asserts that in January of 2006, Gudiel-Soto left the United States for a one-week trip to Guatemala. On January 27, 2006, customs officials informed Gudiel-Soto that was he could not return to the United States as a lawful permanent resident because of his criminal conviction. (Resp't Ex. G, Record of Sworn Statement.) The petitioner does not

**FOR PUBLICATION**

mention this episode, but states that he is currently the subject of a deportation proceeding pending before the United States Immigration Court in Los Angeles, California. He asserts that this proceeding is based solely on the fact of his prior conviction.

## STANDARD OF REVIEW

*Writ of Coram Nobis*

"The writ of error *coram nobis* is available to federal courts in criminal matters under the All Writs Act, 28 U.S.C.A. § 1651(a). It is used to attack allegedly invalid convictions which have continuing consequences, when the petitioner has served his sentence and is no longer in custody for purposes of 28 U.S.C.A § 2255." United States v. Stoneman, 870 F.2d 102, 105-06 (3d Cir. 1989) (internal quotation marks and citation omitted). "*Coram nobis* is an extraordinary remedy, and a court's jurisdiction to grant relief is of limited scope. The interest in the finality of judgments dictates that the standard for a successful collateral attack on a conviction should be more stringent than the standard applicable on a direct appeal. It is even more stringent than that on a petitioner seeking habeas corpus relief under 28 U.S.C.A. § 2255." Id. at 106 (internal quotation marks and citations omitted). A petitioner seeking coram nobis relief must demonstrate that "sound reasons" exist for failing to seek relief earlier, that he continues to suffer collateral consequences from his conviction (even though he is out of custody), and that an error of "the most fundamental character" has occurred. See id.; United States v. Osser, 864 F.2d 1056, 1059 (3d Cir. 1988).

*Ineffective Assistance of Counsel*

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for analyzing ineffective assistance of counsel claims. First, the defendant must show that counsel's performance "fell below an objective standard of reasonableness." Id. at 688.

**FOR PUBLICATION**

This requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The Supreme Court recently held in Padilla v. Kentucky that failing to advise a client about the immigration consequences of a guilty plea amounts to deficient performance. 130 S. Ct. 1473, 1478 (2010). Second, the defendant must show that counsel's ineffectiveness was prejudicial. Id. at 692. In order to satisfy the "prejudice" requirement in a guilty plea context, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Courts can "dispose of an ineffectiveness claim" on either Strickland prong. United States v. Nino, 878 F.2d 101, 105 (3d Cir. 1989).

## DISCUSSION

The parties do not dispute that if the petitioner is to be granted relief, it must be in the form of a writ of error coram nobis. Other forms of relief, such as habeas corpus, are unavailable to him because he has been out of custody, including supervised release, since 2003. The parties dispute whether petitioner can meet the burden to warrant such relief. They also dispute whether the Supreme Court's Padilla decision should be retroactively applied.

### I.      Failure to Challenge Conviction Earlier

The Court finds that petitioner has asserted a valid reason for not seeking relief earlier. The government emphasizes the fact that Gudiel-Soto's petition comes nine years after he withdrew his application for naturalization, and more than four years after he was told that he was inadmissible to the United States. However, the decision principally relied upon by Gudiel-Soto to show that he suffered a fundamental error, Padilla, was not decided until last year, 2010. Before that decision, it was an open question in the Third Circuit whether counsel's error in

4

FOR PUBLICATION

advising a client regarding the collateral consequences of a guilty plea was so fundamental to that conviction that it could satisfy the first prong of Strickland. United States v. Nino, 878 F.2d 101, 105 (3d Cir. 1989) (declining to decide "whether counsel's failure to advise a client about the deportation consequences of a guilty plea can constitute deficient representation absent special circumstances.").[1]  Although Gudiel-Soto had become aware of the immigration consequences of his guilty plea, he did not have the benefit of the Padilla decision until March 31, 2010.  His petition was filed on October 29, 2010.  (ECF No. 47.)  The Court finds that Gudiel-Soto has asserted a valid reason for failing to challenge his conviction earlier.

## II.     Adverse Consequences

It is unclear to the Court whether Gudiel-Soto is in Guatemala, having not been allowed to return since January 27, 2006, or whether he is in California facing deportation proceedings.  The government and petitioner make different factual allegations in that regard.  The Court finds that in either case, the petitioner is facing continuing adverse consequences as a result of his conviction.  In Padilla, the Supreme Court noted that it has "long recognized that deportation is a particularly severe 'penalty,'" even if it is not a criminal sanction in the strictest sense.  130 S. Ct. at 1481  (citing Fong Yue Ting v. United States, 149 U.S. 698, 740 (1893)).  The Court also noted the "severity of deportation," calling it "the equivalent of banishment or exile." Id. at 1486 (quoting Delgadillo v. Carmichael, 332 U.S. 388, 390-91 (1947)).  Whether a person is removed from the United States or prevented from coming back in makes very little difference in that regard; he is "exiled" either way.  The Court finds that Gudiel-Soto is suffering from sufficient

---

[1] The government argues that "in 2008, the Third Circuit held that a trial counsel's affirmative misrepresentation regarding the immigration consequences of a guilty plea falls below an objective standard of reasonableness, pursuant to the Strickland analysis."  (Resp't Br. at 11-12.)  The government cites Sasonov v. United States, 575 F. Supp. 2d 626 (D.N.J. 2008) for this proposition.  However, that case was decided by the District Court of New Jersey, not the Third Circuit.

**FOR PUBLICATION**

adverse consequences as a result of his guilty plea to meet the second prong of the coram nobis test.

### III.     Fundamental Error

The final and most important prong of the coram nobis analysis is whether Gudiel-Soto has established that an error of the most fundamental character occurred before he entered his guilty plea. Petitioner claims that he received ineffective assistance of counsel. To prevail on this claim, Guidel-Soto must show: 1) that his counsel's performance fell below an objective standard of reasonableness, and 2) that he was prejudiced by counsel's ineffective performance. Strickland, 466 U.S. at 668.

*A) Counsel's Performance/Retroactivity of Padilla*

The government argues that Gudiel-Soto's factual allegations are inconsistent because they do not make clear whether his attorney failed to inform him of the risk of deportation, or misinformed him of the those risks. The Court does not find a material distinction. In Padilla, the Court explicitly declined to limit its holding to "affirmative misadvice." 130 S. Ct. at 1484. An attorney's complete failure to provide advice and "affirmative misadvice" both qualify as ineffective assistance of counsel. Id. Given the Supreme Court's instruction and assuming petitioner's allegations to be true, it is not difficult for him to show that his counsel's performance fell below an objective standard of reasonableness. The Supreme Court said as much. See Padilla, 130 S. Ct. at 1486. The more significant question is whether Padilla should be given retroactive effect.

The retroactivity of Padilla has not yet been addressed by the Third Circuit, or any circuit court for that matter. Courts in this district have said that that the rule announced by the Supreme Court in Padilla was a new rule of constitutional criminal procedure under Teague v.

6

**FOR PUBLICATION**

Lane, 489 U.S. 288 (1989), and does not apply retroactively to cases challenged on collateral review. See United States v. Gilbert, Crim. No. 03-0349, 2010 WL 4134286, at *3 (D.N.J. Oct. 19, 2010); United States v. Hough, Crim. No. 02-0649, 2010 WL 5250996, at *3-4 (D.N.J. Dec. 17, 2010). But this Court recognizes that district courts are split on this issue. See, e.g., Martin v. United States, No. 09-1387, 2010 WL 3463949, at *3 (C.D. Ill. Aug. 25, 2010) (holding that Padilla did not create a new rule under Teague and was therefore retroactively applicable); United States v. Millan, Crim. No. 06-0458, 2010 WL 2557699, at * 1 (N.D. Fla. May 24, 2010) (holding same). This Court need not join that discussion now, because the Court finds that the petitioner cannot demonstrate prejudice sufficient to satisfy the second prong of the Strickland test.

*B) Prejudice*

In Hill v. Lockhart, the Supreme Court held that "the two-part Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel." 474 U.S. at 58. "In order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. Here, petitioner claims that if he had been advised of the immigration consequences of his guilty plea, he could have: 1) "held out for a better deal," or 2) taken the oath of citizenship and completed the naturalization process before the conviction was entered.

There are several issues with Gudiel-Soto's arguments - the first being that he has not alleged that he would not have pleaded guilty. This is a significant deficiency under the Hill test. See Hill, 474 U.S. at 60 (finding petitioner's allegations insufficient to satisfy Strickland, in part because "[p]etitioner did not allege in his habeas petition that, had counsel correctly informed

**FOR PUBLICATION**

him about his parole eligibility date, he would not have pleaded guilty and insisted on going to trial"); Dooley v. Petsock, 816 F.2d 885, 891-92 (3d Cir. 1987) (affirming dismissal of petitioner's ineffective assistance of counsel claim, in part because he "failed to allege that he would not have entered a plea of guilty had [his attorney] been disqualified."). The Court also notes that the Padilla petitioner specifically alleged "that he would have insisted on going to trial if he had not received incorrect advice from his attorney." 130 S. Ct. at 1478. Here, Gudiel-Soto has failed to allege that he would not have pleaded guilty and would have insisted on going to trial if his attorney had informed him of the risk of deportation.

The Court is not persuaded by the alternatives proposed by Gudiel-Soto. First, he asserts that he could have "held out for a better deal." The Court cannot imagine how much "better" Gudiel-Soto's deal could have been. His crime carried a mandatory minimum sentence of 10 years to a maximum of life imprisonment. The government requested a "substantial downward departure." (Pet'r Ex. 5, Sentencing Tr.) This Court granted the government's motion and Gudiel-Soto was sentenced to only 43 months. The Court cannot fathom, and Gudiel-Soto does not identify, what "better deal" could have been available to him. Gudiel-Soto was charged with one crime. And this crime carried the risk of deportation no matter how much time Gudiel-Soto served.[2]

It is also highly unlikely that Gudiel-Soto could have taken the oath of citizenship and completed his naturalization process before his conviction was entered. First, he was in continuous custody from the time of his arrest to the date of his sentencing. (Resp't Ex. A, Presentence Investigation Report.) Also, before taking the oath, all eligible individuals are

---

[2] Federal law provided then, as it does now: "Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law . . . of the United States . . . relating to a controlled substance . . . , other than a single offense involving possession of one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. §1227(a)(2)(B)(i).

**FOR PUBLICATION**

required to fill out an N-445 form, which asks: "AFTER the date you were first interviewed on your Application for Naturalization, Form N-400 . . . 3) Have you knowingly committed any crime or offense, for which you have not been arrested? [and] 4) Have you been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, including traffic violations?" (Resp't Ex. H, N-455 Form.)  Before taking the oath of allegiance, applicants bear "the burden of demonstrating that, during the statutorily prescribed period, he or she has been and continues to be a person of good moral character. This includes the period between the examination and the administration of the oath of allegiance." 8 C.F.R. § 316.10(a)(1).  An applicant "shall be found to lack good moral character if during the statutory period the applicant has . . . violated any law of the United States . . . relating to a controlled substance."  8 C.F.R. § 316.10(b)(2)(iii).  As said, it is highly unlikely that Gudiel-Soto would have been permitted to take the oath of allegiance with a charge for heroin trafficking pending against him.

Even if Gudiel-Soto *had* alleged that he would not have pleaded guilty, he still could not meet the prejudice requirement of Strickland.  As recognized by the Supreme Court, "[s]urmounting Strickland's high bar is never an easy task," and it is particularly difficult with this "type of claim, [because] a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla, 130 S. Ct. at 1485.  Third Circuit precedent clearly demonstrates that Guidel-Soto cannot meet this test.

In United States v. Nino, the petitioner claimed "that his conviction should be overturned because his counsel's pre-conviction failure to advise him of the deportation consequences of his guilty plea deprived him of his right to effective assistance of counsel." 878 F.2d 101, 105 (3d Cir. 1989).  The court did not decide whether his attorney's conduct fell below an objective

**FOR PUBLICATION**

standard of reasonableness, because even if he could make that showing, he could not meet the prejudice requirement of Strickland. Id. The record was "replete with evidence of petitioner's guilt." Id. He was "caught by law enforcement officials with approximately twenty-five pounds of cocaine in a car he was driving" and "freely discussed his knowledge of the cocaine in the car and his transportation of it from Miami to New Jersey." Id. Given these facts, the court concluded that "even had petitioner been advised of the deportation consequences of his guilty plea, he would have pled guilty anyway or, had he not done so, been found guilty after trial." Id. Similarly, here, the petitioner was caught by customs officials with more than a kilogram of heroin in his luggage. He freely discussed his knowledge of the heroin in his luggage and his transportation of it from Aruba to New Jersey. He cooperated with law enforcement officials and led them to his contact in New Jersey. It is most unlikely that Gudiel-Soto would not have pled guilty, and even less likely that he would not have been found guilty at trial.

In United States v. Babalola, the petitioner challenged "the district court's decision denying her motion for a writ of error coram nobis." 248 F. App'x 409, 410 (3d Cir. 2007). She was in the midst of removal proceedings, and argued that "her attorney misadvised her about the immigration consequences of pleading guilty, thereby rendering constitutionally ineffective assistance of counsel." Id. The court noted that the ineffective assistance of counsel claim was an open question in the Circuit, but found it unnecessary to decide the issue because Babalola failed to establish the prejudice requirement of the Strickland test. Id. at 413. The court observed that Babalola never asserted that she was factually innocent; to the contrary, she "expressly and unequivocally admitted guilt." Id. at 414. She "received a highly favorable cooperating agreement under which she served only five years' probation with a six month period of home confinement rather than the 10-16 month term of imprisonment dictated under

**FOR PUBLICATION**

the then mandatory guideline regime." Id.  That court found that "[i]n light of the overwhelming evidence of her guilt and the lenity of the government's plea offer, it is highly unlikely that Babalola would have risked a trial which, the evidence shows in any event almost certainly would have resulted in conviction and imprisonment." Id.

Here, the petitioner has also never asserted that he is factually innocent; he admitted guilt when caught with the heroin, and he admitted guilt at his plea and sentencing.  He received a very favorable plea agreement due to his cooperation with the government.  He was potentially facing life in prison, and was ultimately sentenced to 43 months.  Much like Babalola, in light of the overwhelming evidence of petitioner's guilt and the lenity of the government's plea offer, it is highly unlikely that he would not have pled guilty, or would not in any event have been convicted at trial.  The Court determines that Gudiel-Soto cannot meet the prejudice requirement of Strickland, and his petition for a writ of error coram nobis is denied.

## CONCLUSION

Gudiel-Soto's petition for Writ of Error Coram Nobis is DENIED.

s/ William H. Walls
United States Senior District Judge